Nimmi Arora (SBN 368702)
narora@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
100 Spectrum Center Drive, Suite 900
Irvine, CA 92618
Tel.: (949) 800-8601

Charles Andrewscavage (*pro hac vice* forthcoming)
candrewscavage@scopelitis.com
Jared S. Kramer (*pro hac vice* forthcoming)
jskramer@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 1600
Chicago, IL 60603-2427
Phone: 312-255-7200
Fax: 312-422-1224

Attorneys for Defendant,
IRONCLAD ENVIRONMENTAL SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAWANNA WALKER**, individually and on behalf of similarly situated employees,<br><br>*Plaintiff*,<br><br>v.<br><br>**IRONCLAD ENVIRONMENTAL SOLUTIONS, INC.**, a Delaware corporation; and **DOES 1 through 50**, inclusive,<br><br>*Defendants*. | Case No.: 3:26-cv-08696<br><br>**DEFENDANT IRONCLAD ENVIRONMENTAL SOLUTIONS, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT** |

PLEASE TAKE NOTICE that Defendant, Ironclad Environmental Solutions, Inc. (Ironclad) removes this case from the Superior Court of the State of California, County of Alameda to the U.S. District Court for the Northern District of California. In support of this removal, Ironclad states the following:

**1.** **<u>The Action</u>.** Plaintiff, Jawanna Walker, filed her Class Action Complaint, captioned JAWANNA WALKER, individually and on behalf of similarly situated employees, Plaintiff, v. IRONCLAD ENVIRONMENTAL SOLUTIONS, INC., a Delaware Corporation; and DOES 1 through 50, inclusive, Case No. 25CV161021, in the Superior Court of California, County of Alameda, on December 19, 2025. Plaintiff filed her First Amended Class and Representative Action Complaint on April 27, 2026. Ironclad filed its Answer and Affirmative Defenses to the First Amended Class and Representative Action Complaint on February 10, 2026. The First Amended Class and Representative Action Complaint asserts nine causes of action under California law: (1) Failure to Pay Wages for All Hours Worked; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Failure to Furnish Timely and Accurate Wage Statements; (6) Failure to Pay All Compensation Due Upon Discharge; (7) Failure to Reimburse for Business Expenses; (8) Unfair, Unlawful, or Fraudulent Business Practices; and (9) A cause of action under the Private Attorneys General Act of 2004 (Cal. Labor Code §§2698, *et seq*.). Copies of all the pleadings and papers filed in the Superior Court of California, Alameda County, of which Ironclad is aware, are attached as **Exhibit A**.

**2.** **<u>Statutory Grounds for Removal</u>.** This action is removable under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1453. Section 1441(a) provides for the removal of state court civil actions over which U.S. District Courts have original jurisdiction. As is explained in greater detail below, this Court has original jurisdiction over this case under 28 U.S.C. § 1332(d)(2)(A) because this is a class action in which the proposed class consists of at least 100 members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Ironclad.

As such, this action is subject to removal under 28 U.S.C. § 1453, which provides that a class action may be removed to federal court in accordance with 28 U.S.C. § 1446.

**3.** **Class Action.** This case is a class action within the meaning of 28 U.S.C. §§ 1332(d)(2) and 1453. These statutes provide that a class action is a civil action filed under either Fed. R. Civ. P. 23 or a similar state statute or rule that authorizes one or more representative persons to maintain a class action. *See* 28 U.S.C. § 1332(d)(1)(B). In this case, Plaintiff seeks class certification under California's statute authorizing class actions, California Code of Civil Procedure § 382. Am. Compl. ¶ 33.

**4.** **The Aggregate Number of Proposed Class – 28 U.S.C. §§ 1332(d)(5)(B).** Plaintiff defines her proposed class as "all non-exempt employees currently and formerly employed by Defendants in the State of California from four years prior to the filing of this Complaint through the trial date." Am. Compl. ¶ 3. Therefore, the relevant time period for purposes of this removal is December 19, 2021, through the present (the "Class Period"). According to its records, Ironclad employed at least 134 employees in California who Ironclad paid on an hourly basis during the relevant time period (the Putative Class). The aggregate number of the proposed class therefore contains more than 100 members and exceeds the number required by 28 U.S.C. § 1332(d)(5)(B).

**5.** **Citizenship of the Parties.** Upon information and belief, Plaintiff is a citizen of California. *Carolina Cas. Ins. Co. v. Team Equip., Inc*., 741 F.3d 1082, 1086 (9th Cir. 2014) (holding parties asserting diversity jurisdiction can plead citizenship allegations based on information and belief); Am. Compl. ¶ 10; *Ehrman v. Cox Commc'ns, Inc*., 932 F.3d 1223, 1227 (9th Cir. 2019) (holding removing defendant properly alleged based on information and belief that plaintiff was a California citizen, where plaintiff alleged California residency in complaint), cert. denied, 140 S. Ct. 2566 (2020).

Ironclad is a Delaware corporation with its principal place of business located in

Auburn Hills, Michigan. Thus, Ironclad is a citizen of Delaware and Michigan. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…."); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) ("'[P]rincipal place of business' is … the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination."). Thus, Plaintiff and Ironclad are citizens of different states, and the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is met.

**6. Amount in Controversy – 28 U.S.C. § 1332(d)(2).** Although Ironclad denies all of Plaintiff's material allegations, the amount in controversy by virtue of the claims asserted by Plaintiff in the Complaint exceeds the $5,000,000 jurisdictional threshold under 28 U.S.C. § 1332(d). Significantly, Congress intended federal jurisdiction to exist under the Class Action Fairness Act (CAFA) "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Staff of S. Comm. on the Judiciary, 109th Cong., Rep. on The Class Action Fairness Act of 2005, 42 (Comm. Print 2005). The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

When determining the amount that a plaintiff has placed in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal.

2002) (internal citations and alterations omitted). A defendant seeking removal need only plausibly allege that the amount in controversy exceeds the jurisdictional threshold, with evidentiary support required only if the plaintiff contests, or the court questions, that allegation. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014).

Accordingly, Ironclad may establish the amount in controversy by referencing Plaintiff's allegations and/or by setting forth facts in the notice of removal that demonstrate that the amount in controversy is more likely than not to exceed the jurisdictional minimum. Assumptions used in calculating the amount in controversy may be founded on the allegations of the complaint and do not necessarily need to be supported by evidence. *Perez v. Rose Hills Co.*, 131 F.4th 804, 807 (9th Cir. 2025). Indeed, the amount in controversy is "simply an estimate of the total amount in dispute, not a prospective assessment of a defendant's liability." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 994-95 (9th Cir. 2022). In arriving at that estimate, Ironclad is "not required to comb through the records to identify and calculate the exact frequency of violations" and may rely on a representative sample extrapolated to the full putative class. *Salcido v. Evolution Fresh, Inc.*, 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016); *Allen Saltzman LLP v. Bank of America, N.A.*, No. EDCV 24-1956 JGB (SPx), 2025 WL 1914896, at *5–6 (C.D. Cal. June 11, 2025). The amount in controversy reflects possible liability, not likely liability. *Jauregui*, 28 F.4th at 994-95.

Ironclad denies Plaintiff's allegations of misconduct, denies that certification of the Class Plaintiff seeks to represent is appropriate, and intends to defend itself vigorously against all of Plaintiff's causes of action. Nevertheless, and without admitting that this case should proceed as a class action, or that Plaintiff and/or any member of the Putative Class can recover any damages, when one considers the number of individuals in the Putative Class, the number of alleged violations of California law, the statute of limitations period applicable to the claims, and the Putative Class

definition alleged in the operative Complaint, the aggregate amount in controversy presented by the case exceeds $5,000,000 for purposes of removal based on the following:

**a. Failure to Pay Wages for All Hours Worked**

Plaintiff alleges that Ironclad failed to pay Plaintiff and the Putative Class for all hours worked, including by requiring Plaintiff and the Putative Class to complete work off the clock. Am. Compl. ¶¶ 27, 32, 39-43. Plaintiff further alleges that Ironclad failed to compensate Plaintiff and the Putative Class for work performed during meal periods. *Id.* ¶¶ 51-53. Plaintiff's Unfair Competition Law ("UCL") claim is premised on the conduct alleged in the underlying claims alleging violation of the Labor Code, including Plaintiff's allegations that he and putative class members performed work off the clock. *Id.* ¶¶ 79-85. The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Plaintiff seeks unpaid wages, liquidated damages, attorneys' fees, and costs. *Id.* ¶¶ 42-43.

For purposes of determining the amount placed in controversy by this claim, Ironclad conservatively assumes that Plaintiff's allegations place at issue an average of 2.25 hours of unpaid work per workweek, consisting of fifteen minutes of alleged off-the-clock work per workday over a five-day workweek (1.25 hours), plus one additional hour per week for alleged uncompensated work performed during two meal periods. This assumption is grounded in Plaintiff's allegations that Ironclad maintained company-wide practices requiring off-the-clock work and failing to compensate employees for all hours worked, and that the alleged violations of California labor laws committed by Ironclad were "routine" and "repeated." *See* Am. Compl. ¶¶ 27, 29, 32, 41, 51-53. Courts have recognized that defendants may rely on reasonable assumptions grounded in complaint allegations when estimating the amount in controversy. *Perez*, 131 F.4th 804, 807 (9th Cir. 2025).

Ironclad's records identify each member of the Putative Class, the number of

weeks worked during the Class Period, and the hourly rate assigned to each of the 134 putative class members. Using those records, Ironclad calculated the amount in controversy on an employee-by-employee basis rather than applying a uniform rate across the class. Applying the 2.25-hour weekly assumption described above to each employee's workweeks and hourly rate, Plaintiff's claim for unpaid wages places **$823,844.48** in controversy.

Plaintiff also expressly seeks liquidated damages pursuant to Labor Code section 1194.2. Am. Compl. ¶ 2. In determining the amount in controversy, courts may include liquidated damages equal to the amount of unpaid minimum wages sought by plaintiff. *Jauregui*, 28 F.4th 989, 994-96 (9th Cir. 2022). The weighted average minimum wage rate in California during the applicable period was **$16.08**. Based on Ironclad's records, Ironclad employed the Putative Class for a total of approximately 11,867 weeks during the Class Period. Applying the $16.08 weighted average California minimum wage rate, Plaintiff's request for liquidated damages places an additional **$429,348.06** in controversy (11,867 weeks x 2.25 hours x $16.08).

Accordingly, Plaintiff's First Cause of Action for Failure to Pay wages for All Hours Worked places at least **$1,253,192.54** in controversy.

**b. Failure to Pay Overtime Wages**

Plaintiff alleges that Ironclad failed to pay overtime wages to Plaintiff and the Putative Class. Specifically, Plaintiff alleges that members of the Putative Class worked in excess of eight hours per day, forty hours per week, and, in some instances, twelve hours per day, but were not paid overtime compensation as required by California law. Am. Compl. ¶¶ 28, 30, 45-48. Plaintiff seeks unpaid overtime wages, interest, attorneys' fees, and costs. *Id.* ¶¶ 48-49.

Unless an exemption applies, California law requires that employers pay non-exempt hourly employees one-and-one-half times their regular rate for all hours worked over eight hours in a day or 40 hours in a week. Cal. Lab. Code § 510. Additionally,

non-exempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. *Id.* Employers must pay double time for all hours worked over 12 hours in a day. *Id.* When a UCL claim is alleged, the statutory period for recovery under California Labor Code section 510 is calculated under a 4-year statute of limitations. Cal. Bus. & Prof. Code § 17208.

For purposes of determining the amount placed in controversy by this claim, Ironclad does not rely solely on assumptions derived from the Complaint. Instead, Ironclad analyzed employee-specific records of hours worked by members of the Putative Class from January 2, 2023 through December 24, 2024 to determine the total number of hours worked in excess of 40 during a single workweek (or in excess of 12 hours in a day) during that period. Ironclad then divided that total by the number of weeks during which Ironclad employed members of the Putative Class within the time period reflected in those records to estimate the average number of overtime hours worked per week by members of the Putative Class. Applying that methodology, Ironclad determined, for purposes of estimating the amount in controversy, that putative class members worked a total of approximately 26,597 overtime hours during a total of 3,452 workweeks reflected in the data sample, for an average of 7.7 hours of overtime per workweek.

Plaintiff alleges that the overtime hours at issue were paid at the regular rate rather than the applicable overtime rate. Am. Compl. ¶ 30. Accordingly, Ironclad calculated the overtime premium allegedly owed each putative class member by multiplying the 7.7 average number of overtime hours worked per week by one-half of the hourly rate assigned to each putative class member and the total number of weeks during which Ironclad employed them during the Class Period. Adding those amounts across the Putative Class, Plaintiff's Second Cause of Action for Failure to Pay Overtime Wages places at least **$1,471,567.06** in controversy.

**c. Failure to Provide Meal Periods**

Plaintiff alleges that Plaintiff and Class Members regularly worked more than five hours without receiving legally compliant meal periods and that Ironclad failed to pay the premium compensation required by Labor Code section 226.7. Am. Compl. ¶¶ 26, 31, 50-54. Plaintiff seeks meal-period premiums, interest, attorneys' fees, and costs. *Id.* ¶¶ 53-54. The statutory period for recovery for a California Labor Code section 226.7 claim pursued with a UCL claim is four years. Cal. Bus. & Prof. Code § 17208.

For purposes of determining the amount placed in controversy by this claim, Ironclad conservatively assumes that Plaintiff's allegations place at issue two meal-period premium violations per workweek. This assumption is supported by Plaintiff's allegations that Defendant maintained meal-period practices affecting all Class Members throughout the Class Period. *See* Am. Compl. ¶¶ 26, 29, 31, 33, 50-54. Courts routinely approve similar assumptions in wage-and-hour class actions. *E.g.*, *Amezcua v. CRST Expedited, Inc.*, 653 F. Supp. 3d 712, 721 (N.D. Cal. 2023) (finding twice-per-week violation rate reasonable where Plaintiff alleged defendants had a "policy and practice" of denying meal periods); *Casanares v. FreshRealm, Inc.*, No. 4:25-cv-04249-KAW, 2025 WL 2701880, at *3 (N.D. Cal. Sept. 23, 2025) ("In general, courts in this district have 'found a 50% violation rate for meal and rest break violations reasonable in [cases with] allegations of a 'pattern or practice' of meal and rest break violations.") (citing cases).

Ironclad's records identify each member of the Putative Class, the number of weeks during which they Ironclad employed them during the Class Period, and each employee's applicable rate of pay. Applying a two-meal-premium-per-week assumption to each employee's complete workweeks and hourly rate, Ironclad used the following formula:

**2 meal-period violations per week × employee-specific weeks worked × employee-specific hourly rate**

Applying that formula, Plaintiff's Third Cause of Action for Failure to Provide

Meal Periods places at least **$731,156.20** in controversy.

**d. Failure to Provide Rest Periods**

Plaintiff alleges that Ironclad failed to provide Plaintiff and Class Members required rest periods and failed to pay the additional compensation required by Labor Code section 226.7 when compliant rest periods were not provided. Am. Compl. ¶¶ 55-60. Plaintiff seeks rest-period premiums, interest, attorneys' fees, and costs. *Id*. ¶¶ 58-60. As with her meal period claim, Plaintiff's claim for rest period premiums carries a 4-year limitations period when pursued with a UCL claim. Cal. Bus. & Prof. Code § 17208.

For purposes of determining the amount placed in controversy by this claim, Ironclad conservatively assumes that Plaintiff's allegations place at issue two rest-period premium violations per workweek. This assumption is similarly grounded in Plaintiff's allegations that Ironclad maintained class-wide practices affecting Plaintiff and the Putative Class throughout the Class Period. *See* Am. Compl. ¶¶ 26, 29, 31, 33, 55-60; *Amezcua*, 653 F. Supp. 3d at 721; *Casanares*, 2025 WL 2701880, at *3.

Ironclad's records identify each member of the Putative Class, the number of weeks during which Ironclad employed them during the Class Period, and each employee's applicable rate of pay. Using those records and assuming two rest-period premium violations per workweek, Ironclad used the following formula:

**2 rest-period violations per week x employee-specific weeks worked x employee-specific hourly rate**

Accordingly, Plaintiff's Fourth Cause of Action for Failure to Provide Rest Periods places at least **$731,156.20** in controversy.

**e. Failure to Furnish Timely and Accurate Wage Statements**

California Labor Code section 226 requires California employers to furnish employees with accurate itemized wage statements containing specified information each pay period. Cal. Lab. Code § 226(a). Labor Code section 226(e) provides for

statutory penalties of $50 for an initial violation and $100 for each subsequent violation, not to exceed an aggregate penalty of $4,000 per employee. Cal. Lab. Code § 226(e)(1). The statute of limitations for recovery under section 226 is one year. *See* Cal. Civ. Proc. Code § 340(a).

Plaintiff alleges that Ironclad furnished inaccurate wage statements because the wage statements allegedly failed to reflect all wages owed, including overtime wages, meal-period premiums, rest-period premiums, and compensation for all hours worked. Am. Compl. ¶¶ 5-6, 29-32, 62-65. Plaintiff further alleges that Defendants knowingly and intentionally failed to comply with Labor Code section 226(a) with respect to each wage statement provided to Plaintiff and the Putative Class. *Id.* ¶¶ 64-65. Plaintiff seeks statutory penalties, attorneys' fees, and costs pursuant to Labor Code section 226. *Id.* ¶¶ 65-67.

Courts faced with similar allegations have concluded it is reasonable to assume a 100% violation rate for purposes of estimating the amount placed in controversy on such claims. *E.g. Casaneres*, 2025 WL 2701880, at *5; *Amezcua*, 653 F. Supp. 3d at 722 & n.8. Throughout the one-year limitations period applicable to Plaintiff's wage-statement claim, Ironclad furnished wage statements to members of the Putative Class on a bi-weekly basis. During that time, Ironclad employed 115 members of the Putative Class. Of those, 37 employees worked enough weeks to reach the maximum $4,000 penalty, for a total of $148,000. 78 putative class members worked fewer weeks, resulting in penalty amounts placed in controversy that range from $50 to $3,950, for a total of $132,100. Altogether, Plaintiff's Fifth Cause of Action for Failure to Furnish Timely and Accurate Wage Statements places **$280,100.00** ($148,000 + 132,100) in controversy.

**f. Failure to Pay All Compensation Due Upon Discharge**

California Labor Code section 203 provides for waiting-time penalties where an employer willfully fails to pay all wages due to a discharged or resigning employee

within the deadlines provided by Labor Code sections 201 and 202. The penalties take the form of the employee's daily wages for each day the employer fails to pay all wages due, up to a maximum of thirty days. Cal. Lab. Code § 203(a). Labor Code section 203 carries a three-year statute of limitations. Cal. Lab. Code § 203(b).

Plaintiff alleges that Defendants are liable for waiting-time penalties because Defendants allegedly failed to pay all wages due to former employees upon separation of employment, including the unpaid wages, overtime wages, meal-period premiums, and rest-period premiums discussed above. Am. Compl. ¶¶ 7, 68-73. Plaintiff seeks waiting-time penalties pursuant to Labor Code § 203, attorneys' fees, and costs. *Id.* ¶ 73. Faced with similar allegations, Courts routinely recognize it is reasonable to assume a 100% violation rate for purposes of calculating the amount placed in controversy by Plaintiffs' derivative waiting-time penalties claims. *See La Grow v. JetBlue Airways Corp.*, No. 24-cv-00518, 2024 WL 3291589, at *5 (C.D. Cal. July 3, 2024) ("Courts in the Ninth Circuit have found both a 100% assumed violation rate and using the maximum 30-day recovery period for waiting time penalties to be reasonable.") *Casanares*, 2025 WL 2701880, at *4–5; *Amezcua*, 653 F. Supp. 3d at 722 & n.8; *Franklin v. Home Depot U.S.A., Inc.*, No. 5:25-cv-03657-BLF, 2025 WL 1983036, at *4 (N.D. Cal. July 17, 2025).

Ironclad's records indicate that 64 members of the Waiting Time Penalty Subclass separated employment during the applicable three-year period. Using employee-specific payroll records, Ironclad calculated each employee's daily wage based on the employee's regular hourly rate and an eight-hour workday, then applied a thirty-day waiting-time penalty on an employee-by-employee basis. Accordingly, Ironclad calculated the amount placed in controversy using the following formula:

**Employee-specific hourly rate x 8 hours per day x 30 days**

Applying this methodology, Plaintiff's Sixth Cause of Action for Failure to Pay All Compensation Due Upon Discharge places at least **$452,841.60** in controversy.

**g. Failure to Reimburse Business Expenses**

Plaintiff alleges that Plaintiff and Class Members were required to incur work-related expenses, including cell-phone expenses, and that Defendants failed to reimburse those expenses. Am. Compl. ¶¶ 74-78. Plaintiff seeks reimbursement, attorneys' fees, and costs. *Id.* ¶ 77.

Labor Code § 2802 requires that "[w]hen employees must use their personal cell phones for work-related calls," their employer must reimburse them for "a reasonable percentage of their cell phone bills." *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014); *see also, Cocroft v. Equipmentshare.com*, No. 24-CV-00645-BAS-AHG, 2024 WL 3877274 at *5(S.D. Cal. Aug. 19, 2024); *Castro v. ABM Indus. Inc.*, No. 14-CV-05359-YGR, 2015 WL 1520666 at *1 (N.D. Cal. Apr. 2, 2015).

Ironclad's records reflect that Ironclad employed members of the Putative Class for a total of approximately 2,742.9 months during the Class Period. For purposes of estimating the amount placed in controversy by Plaintiff's claims, Ironclad estimates putative class members incurred approximately $70 per month in cell phone expenses. *See, e.g. Gurzenski v. Delta Air Lines, Inc.*, No. 221CV05959ABJEMX, 2021 WL 5299240, at *4 (C.D. Cal. Nov. 12, 2021) (finding assumption that class members incurred $76 per month in cell phone expenses was "reasonable" and "based on reliable market-based evidence"). Ironclad accordingly calculated the amount placed in controversy by Plaintiff's claim using the following formula:

**2,742.9 months worked x $70 monthly cell-phone expense)**

Applying this methodology, Plaintiff's Seventh Cause of Action for Failure to Reimburse Business Expenses places **$192,003.00** in controversy. This amount likely underestimates the amount placed in controversy by Plaintiff's claim, as it does not include other expenses Plaintiff ostensibly seeks to recover, but which are not specifically enumerated in the operative complaint.

**h. Attorneys' Fees**

Plaintiff's claim for attorneys' fees also may be included in the amount in controversy. *See Fritsch v. Swift Transp. Co. of Az., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). In class action cases in California, prevailing plaintiffs have requested, and courts have awarded, attorney fees in the range of 25%-33% of the overall recovery, with 25% as the "benchmark." *See Vasquez v Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491, 492 (E.D. Cal. 2010) (citing to five wage and hour cases where federal court judges approved fee awards that ranged from 30% to 33% and approving percentage of the fund award of 33% to class counsel); *see also Kastler v. Oh My Green, Inc.*, 2019 WL 5536198, at *7 (N.D. Cal. Oct. 25, 2019) (concluding that a defendant's estimate of attorney's fees using 25% of the putative class recovery reasonable) (citing *Cortez v. United Nat. Foods, Inc.*, 2019 WL 955011, at *7 (N.D. Cal. Feb. 27, 2019) (citing several wage and hour cases using a 25% benchmark)).

The 25% benchmark for attorneys' fees is a reasonable assumption in this case and places an additional **$1,278,004.15** ($1,253,192.54 + $1,471,567.06 + $731,156.20 + $731,156.20 + $192,003.00 + $452,841.60 + $280,100.00) * 0.25) in controversy. The amount in controversy for each claim and in total can be summarized as follows:

| **Claim** | **Amount in Controversy** |
|---|---|
| Failure to Pay Wages for All Hours Worked | $1,253,192.54 |
| Failure to Pay Overtime Wages | $1,471,567.06 |
| Failure to Provide Meal Periods | $731,156.20 |
| Failure to Provide Rest Periods | $731,156.20 |
| Failure to Furnish Timely and Accurate Wage Statements | $280,100.00 |
| Failure to Pay All Compensation Due Upon Discharge | $452,841.60 |
| Failure to Reimburse Business Expenses | $192,003.00 |
| Subtotal | $5,112,016.59 |

| | |
|---|---|
| Attorneys' Fees (25% of Subtotal) | $1,278,004.15 |
| **Total** | **$6,390,020.74** |

The total amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(d) is therefore approximately **$6,390,020.74**. The jurisdictional threshold is met in this case.

**7. <u>Timeliness of Removal.</u>** Under 28 U.S.C. § 1446(b), a Notice of Removal must be filed within 30 days of receiving a copy of the complaint only if the case stated by the initial pleading is removable; if not, the notice of removal must be filed within 30 days after a defendant receives "a copy of an amended pleadings, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3).

The deadline for removal has not begun to run where, as here, removability can only be determined by performing "mathematic calculation[s]" using figures not specified in a complaint. *See Kuxhausen v. BMV Fin. Servs.*, 707 F.3d 1136, 1139-40 (9th Cir. 2013) (clock begins running only when the basis for removal is "revealed affirmatively in the initial pleading" (internal quotation marks omitted)); *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786 (9th Cir. 2018) (*Kuxhausen* applies to CAFA removals).

Moreover, where neither the complaint nor any subsequently received paper reveals on its face that an action is removable, a defendant may remove after conducting its own investigation and determining that federal jurisdiction exists. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125-26 (9th Cir. 2013); *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014).

Here, neither Plaintiff's original Complaint nor the First Amended Complaint alleged an amount-in-controversy, and Defendants have not received a post-complaint pleading or other paper that affirmatively and unambiguously specified damages in an amount sufficient to satisfy the federal jurisdictional minimum. Rather, Ironclad

determined removability through its own analysis of payroll, personnel, timekeeping, and other business records. Therefore, the deadline to file the notice of removal has not passed, and this Notice is timely.

**8.** **Notice of Removal to Adverse Parties and to State Court Clerk.** Pursuant to 28 U.S.C. § 1446(d), Ironclad will give written notice of this removal to Plaintiff and to the Clerk of the Superior Court of Alameda County, California. Specifically, promptly after filing this Notice of Removal, Ironclad will send to Plaintiff and will file with the Clerk of the Superior Court of Alameda County, California, a Notice of Removal to Adverse Parties and State Court Clerk, a true and correct copy of which is attached as **Exhibit B.**

**9.** **No waiver.** By filing this Notice of Removal, Ironclad does not waive any available defenses.

WHEREFORE, Ironclad respectfully removes this case to this Court.

Dated: August 20, 2026

Respectfully submitted,

SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP

*/s/ Nimmi Arora*
Nimmi Arora
Attorney for Defendant,
IRONCLAD ENVIRONMENTAL SOLUTIONS, INC.

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I, **Janice Liu**, am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 100 Spectrum Center Drive, Suite 900, Irvine, California 92618.

On, August 20, 2026, I served the foregoing document described as **DEFENDANT IRONCLAD ENVIRONMENTAL SOLUTIONS, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT** on interested parties in this action as follows:

Danny Yadidsion, Esq.
Paige Taylor, Esq.
LABOR LAW PC
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Telephone: (310) 494-6082
Danny@LaborLawPC.com
Paige.Taylor@LaborLawPC.com
calendar@laborlawpc.com

*Attorneys for Plaintiff*

√ **(BY E-MAIL)** or electronic transmission. I caused the documents to be sent to the person(s) at the e-mail address(es) listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

√ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 20, 2026 at Irvine, California.

Janice Liu

4925-5821-8950,